UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
UNITED STATES OF AMERICA,
                              v.

ZHI HE WANG,

                      Defendant.

-------------------------------------------------------------- x

No. 13 Cr. 179 (MGC)

# MEMORANDUM OF LAW IN SUPPORT OF
# DEFENDANT ZHI HE WANG'S MOTION TO DISMISS THE INDICTMENT, MOTION TO SEVER, MOTION FOR A SPEEDY TRIAL, AND MOTION FOR DISCOVERY

SEWARD & KISSEL LLP
Rita M. Glavin
One Battery Park Plaza
New York, New York 10004
Tel: (212) 574-1309
Fax: (212) 480-8421
glavin@sewkis.com

*Attorney for Defendant
Zhi He Wang*

## I. PRELIMINARY STATEMENT

Defendant Zhi He Wang respectfully submits this Memorandum of Law in support of the following motions: motion to dismiss the indictment; motion to sever; motion for a speedy trial; and motion for expedited discovery. He makes these motions because he is innocent of the charged crime, and he is not the "Little Yang" charged in the Indictment. Mr. Wang has already spent over a month in jail for a crime he did not commit and he now moves the Court for appropriate relief.

On April 25, 2013, the government unsealed a superseding Indictment ("Indictment") charging 38 defendants in three counts: Count One charges a marijuana conspiracy from 2010 through in or about 2013, in violation of 21 U.S.C. §§ 846, 841(b)(1)(A); Count Two charges a conspiracy to distribute contraband cigarettes from in or about 2011 to 2013, in violation of 18 U.S.C. §§ 371, 2342(a), and 2344(a); and Count Three charges a conspiracy to launder money from in or about 2010 to 2013, in violation of 18 U.S.C. § 1956(h). Mr. Wang is charged only in Count Two, as Zhi He Wang, a/k/a "Little Yang."

The Indictment alleges a single overt act involving Mr. Wang. Specifically, the Indictment alleges that on August 26, 2012, Mr. Wang had a phone conversation with co-defendant Wai Chiu Au-Yeung, a/k/a "Old Man," a/k/a "Brother Chiu," and that they discussed the charged contraband cigarette trafficking operation. Indictment ¶4gg. This phone call was recorded pursuant to a court-authorized wiretap on cellular phone number 347-652-7079 (the "Target Cellphone"). In this particular call, the Target Cellphone was communicating with a person using cellphone number XXX-XXX-2549 ("2549 Line").[1]

---

[1] The first six digits of this number have been redacted for privacy reasons. Should the Court deem the full number relevant to this motion, the defense will make that number available to the Court. The Government has the full number.

Mr. Wang has never dialed nor received a call from the Target Cellphone; Mr. Wang is not the "Little Yang" charged in the Indictment; and Mr. Wang did not use the 2549 Line. Rather, an acquaintance of Mr. Wang, Xue Yang (who is known in his local Chinese community as "Little Yang"), used the 2549 Line and is the person recorded over the wiretaps having numerous conversations with defendant Au-Yeung. The 2549 Line was part of a five-phone line T-Mobile plan that was registered under Mr. Wang's wife's name. That T-Mobile plan includes phone lines used by Mr. Wang's family members and two acquaintances, one of whom is Xue Yang.

At the time of his initial appearance before this Court on April 24, 2013, Mr. Wang immediately provided to the government the full name and home address of Xue Yang, who lives in California. Subsequent to that appearance, the government provided discovery materials to the defense that explicitly identify a person named Xiao Yang[2] as contacting the Target Cellphone using the 2549 Line, corroborating Mr. Wang's assertion that it was Xue Yang who used the 2549 Line and communicated with the Target Cellphone.

The sole basis for the indictment against Mr. Wang is the fact that the 2549 Line is under a T-Mobile plan in Mr. Wang's wife's name and someone had conversations about illegal activity on that line. Prior to the Indictment, the Government conducted no surveillance on the person using the 2549 Line, obtained no cell site information for the 2549 Line, conducted no phone analysis through pen registers or toll records for the 2549 Line to determine who was actually using that particular phone, and spoke to no witnesses who identified Zhi He Wang as being involved in the conspiracy charged in the Indictment.

---

[2] The government line sheets and discovery materials spell Xue Yang's name phonetically, referring to him as "Xiao" Yang. For the purposes of this motion and for the sake of clarity, we will refer to Mr. Yang as Xue Yang.

3

Mr. Wang now moves this Court for appropriate relief so that he may clear his name in an expedited and fair process, such that he will not have to travel back-and-forth from his home in California in a 38-defendant complex case that will likely proceed for more than a year and involves individuals he does not know and crimes he had no involvement in. Accordingly, Mr. Wang moves the Court to dismiss the indictment against him or, in the alternative, to sever his case from the larger 38-defendant Indictment. Further, Mr. Wang moves for a speedy trial and expedited discovery, including all *Brady, Giglio*, and relevant 3500 material.

## II. STATEMENT OF FACTS

### A.   Mr. Wang's Arrest and Incarceration

On March 19, 2013, Mr. Wang was arrested at approximately 4:30 am in his home in Temple City, California in connection with the original Indictment in this case, which charged Mr. Wang with conspiracy to distribute contraband cigarettes. That nonviolent offense carries a 5-year maximum sentence. During the course of this arrest, federal agents forcibly broke through at least one door in Mr. Wang's home, frightening Mr. Wang's family, including his elderly mother-in-law who did not speak English, his wife and his teenage son. As the agents stormed into the Wang home, Mr. Wang was pushed to the ground and handcuffed, and his teenage son was also handcuffed. The agents then took Mr. Wang away in his pajamas.

At his March 19, 2013 initial appearance in the Central District of California, Mr. Wang, through his lawyer, informed the government that this was a case of mistaken identity, i.e., Mr. Wang was not the "Little Yang" who allegedly participated in the contraband cigarette conspiracy. Nonetheless, the government opposed bail for Mr. Wang at that time, and he was subsequently detained and transported by the U.S. Marshal Service across the United States to face the contraband cigarette charge in the Southern District of New York. He spent 36 days in

4

federal custody, in at least three different federal prison facilities (Los Angeles, Oklahoma and the MCC in Manhattan), waiting to appear before this Court.

At the time of his March 19, 2013 arrest, the U.S. Attorney's Office issued a press release announcing Mr. Wang's arrest as a member of a "nationwide marijuana and cigarette trafficking conspiracy," and commending the "outstanding investigative efforts" of the law enforcement agents involved in this case. *See* Exhibit D. As a result, Mr. Wang's name and city of residence appeared in the California press as being part of a "Southeast Asian marijuana and counterfeit cigarette trafficking organization." *See* Exhibit E.[3]

On April 24, 2013, Mr. Wang was first arraigned before the Court and subsequently released on bail. Mr. Wang provided the government with Xue Yang's name and home address on that day, and informed the government that Xue Yang was the individual who used the 2549 Line. On April 30, 2013, Mr. Wang was arraigned on the superseding Indictment. At that time, he objected to the exclusion of time from the Speedy Trial Act and requested a June 1, 2013 trial date on the grounds that he would be unfairly prejudiced if he remained in the case with the 37 other defendants and did not get a trial for many, many months.

**B.     Mr. Wang's May 2, 2013 Meeting with the Government**

Mr. Wang voluntarily met with the government on May 2, 2013, without a proffer agreement, and credibly explained that Xue Yang is the person who has used the 2549 Line for the past several years. Mr. Wang had no knowledge of any illegal activity occurring over that 2549 Line. Mr. Wang identified Xue Yang out of a photo lineup presented to him by the government. Mr. Wang also supplied the government with a copy of the toll records for 2549 Line that was in contact with the Target Cellphone. *Notably, the government did not have these*

---

[3] *Local Suspects Charged in Nationwide Marijuana and Counterfeit Cigarette Ring*, CBS Los Angeles (March 19, 2013, 8:11 pm), http://losangeles.cbslocal.com/2013/03/19/local-suspects-charged-in-nationwide-marijuana-and-counterfeit-cigarette-ring/.

5

*2549 Line toll records before Mr. Wang provided them to the prosecutors*. Those phone records identify Mr. Wang's wife as the T-Mobile account holder for the plan and list Mr. Wang's home address. There are five phone numbers associated with this plan. The only line that was in contact with the Target Cellphone was the 2549 Line, the one used by Xue Yang.

**C.     Rule 16 Discovery**

The government's Rule 16 discovery materials corroborate Mr. Wang's assertions. On August 16, 2012, the government filed its Second Periodic Report in support of the July 25, 2012 wiretap order issued on the Target Cellphone. *See* Exhibit A (Bates-stamped SD 001469). That report provides information to the Court involving what the government describes as "pertinent conversations" related to the ongoing wiretap. This report includes a transcript excerpt of a call on August 6, 2012 at 10:38 pm between defendants Paul Lay and Au-Yeung. These defendants allegedly discuss a business transaction involving "boxes," which the government alleges are contraband cigarettes. **At the end of the excerpt, Mr. Au-Yeung says that he will call <u>Xue Yang</u> who has the cigarettes**. *Id*. Then, at 11:21 pm, the Target Cellphone calls Xue Yang at the 2549 Line. A linesheet memorializing this call is part of the Rule 16 discovery materials recently provided to the defense. *See* Exhibit B (August 6, 2012 Linesheet, Session 983). Thus, the government's own records indicate that Xue Yang used that 2549 Line, and the government was on notice that there was an issue regarding the identity of the person who used the 2549 Line.

Mr. Wang's assertions are further corroborated by a linesheet memorializing a call that occurred on September 3, 2012 at approximately 9:54 pm. *See* Exhibit C (September 3, 2012 Linesheet, Session 1731). This call is between the Target Cellphone and the 2549 Line. The person using the Target Cellphone says, "Hello? Xiao Yang?"

6

At this time, Mr. Wang is still under Indictment. Despite proclaiming his innocence since his initial arrest in March, and the fact that the government had no witness who identified Mr. Wang as part of this conspiracy or any evidence demonstrating he used the 2549 Line, Mr. Wang was held in custody for over a month, shuttled from California to New York, and forced to endure myriad humiliations, including a terrifying early-morning raid and arrest in front of his family for this nonviolent crime that carries a maximum sentence of 5 years. Mr. Wang has been truthful with the government and he has taken every reasonable step to inform the government of its grave error.

**III. ARGUMENT**

    **A. THE INDICTMENT AGAINST MR. WANG SHOULD BE DISMISSED**

The charges against Mr. Wang are necessarily deficient. Probable cause for arrest exists when there is "reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) *by the person to be arrested.*" *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir. 1983) (emphasis added). There is nothing in the government's evidence to suggest that Mr. Wang is the "Little Yang" who is on the recorded calls. The government has not and cannot identify any witness who will testify that Mr. Wang personally used the 2549 Line, that Mr. Wang called the Target Cellphone, or that Mr. Wang had any involvement in the distribution of contraband cigarettes. The Indictment is unconstitutionally vague as it pertains to Mr. Wang and is defective to such an extent that dismissal is appropriate. Fed. R. Crim. P. 12(b)(3).

The government, after obtaining months of wiretap evidence, pen registers, GPS orders, and cell phone records, and with countless opportunities to secure cell site records for the 2549 Line or to visually observe Mr. Wang, moved forward with an indictment of Mr. Wang based

7

solely on the fact that a person with a man's voice was using the 2549 Line and the 2549 Line is in his family's name. The man using the 2549 Line could have been anyone and the government made no meaningful efforts to determine whether that person was in fact Mr. Wang. It is unclear what hearsay evidence the grand jury could have heard to suggest that Mr. Wang ever used the 2549 Line. Such a defect raises legitimate questions as to the soundness of the grand jury process in this case.

The government's missteps and failure to analyze the most basic evidence, including the fact that Xue Yang was referred to by name in the 2549 Line calls with the Target Cellphone, call into question the merits of the investigation and the quality of the evidence presented to the grand jury. Without taking the necessary investigative steps, the government indicted Mr. Wang and sent him on a months-long journey in custody to New York to be arraigned for crimes in which he had no involvement.

Mr. Wang respectfully requests that the Court dismiss the Indictment against him because the evidence used to charge him was inadequate, the Indictment is impermissibly vague and because the Rule 16 discovery demonstrates that Mr. Wang was not involved in the contraband cigarette conspiracy.

**B. MR. WANG'S CASE SHOULD BE SEVERED FROM THAT OF HIS CO-DEFENDANTS**

Alternatively, if the Court does not dismiss the Indictment, the defense requests that Mr. Wang's case be severed from the other defendants and he be granted a Speedy Trial.

A court may sever a defendant from other defendants in an indictment when a joint trial would prejudice the defendant. *See* Fed. R. Crim P. 14(a). "Motions to sever under Rule 14 are committed to the sound discretion of the district court and are considered virtually

8

unreviewable." *United States v. Graham*, 477 Fed. Appx. 818, 821 (2d Cir. 2012) (quoting *United States v. Diaz*, 176 F.3d 52, 102 (2d Cir. 1999)).

Mr. Wang lives with his family in California, where he has resided and worked since emigrating to the United States decades ago. It is obviously difficult for Mr. Wang to repeatedly travel back and forth between California and New York as the 37 co-defendants in this case prepare for trial over the course of many months. This is not, however, just a matter of inconvenience. Mr. Wang's family endured the emotional toll of his forceful arrest at 4:30 a.m., and the weeks in confinement have left their mark. Mr. Wang has a family to care for and a family business to run in California. The prejudice of a long drawn-out trial, one for which virtually all the co-defendants have waived their speedy trial rights, is extreme in both its emotional and financial effects. The next status conference in this complex case is months away, and there is no trial date or motion schedule.

Severance is necessary because, in cases in which there is more than one defendant, "the Speedy Trial Act imposes a unitary time clock on all co-defendants joined for trial." *United States v. Ajemian*, 878 F.Supp. 2d 432, 435 (S.D.N.Y. 2012). In this case, with its 37 co-defendants, there is only one speedy trial clock and it will not move quickly enough for Mr. Wang. A separate trial allows for Mr. Wang to clear his name in a timely and judicious manner.

A joint trial would pose a serious risk of compromising Mr. Wang's right to exonerate himself, especially in light of the clear evidence establishing that the government indicted, arrested, and incarcerated the wrong man. This is a complex case with many defendants who have varying degrees of culpability in an illegal marijuana conspiracy, money laundering conspiracy, and contraband cigarette conspiracy. Mr. Wang has demonstrated, via the government's own discovery materials, that his culpability -- to the single count in which he is

charged – cannot be established. This creates a heightened risk of prejudice to Mr. Wang. *See Zafiro v. United States*, 506 U.S. 534, 539 (1993) (noting a heightened risk of prejudice when defendants in a complex case "have markedly different degrees of culpability."). In this case, it is not just a question of relative culpability. It is readily evident that the government has the wrong man. No cooperators will provide testimony against him; no one can or will identify Mr. Wang's voice on the wiretaps; and no law enforcement agent indicates that they surveilled Mr. Wang as part of this investigation. Moreover, much of the evidence in the larger case would be inadmissible in the separate trial of Mr. Wang. Indeed, any evidence regarding the marijuana and money laundering conspiracies have no relevance to the charge against Mr. Wang.

A trial of Mr. Wang would take just a few days. In terms of discovery, there is very little that relates to Mr. Wang, and the defense has already reviewed that discovery. If Mr. Wang were to remain in the case with his 37-co-defendants, he will suffer undue prejudice from both the long lapse of time for the case to proceed to trial and the "spill-over" effect of being lopped together with co-defendants involved in serious crimes that have nothing to do with him.

### C.  MR. WANG SHOULD BE GRANTED A SPEEDY TRIAL

During his April 30, 2013 arraignment, this Court set the next status conference in this case for September 2013. Mr. Wang then objected to any exclusion of time under the Speedy Trial Act. As the Court and the government are aware, every defendant has a right to a Speedy Trial. Indeed, the very reason the law gives defendants the right to a Speedy Trial is to allow individuals facing circumstances like Mr. Wang the right to a speedy resolution of a case. *See Doggett v. United States*, 505 U.S. 647, 654 (1992) (noting the prejudices of a delayed trial, including pre-trial anxiety and concern as well as the loss of exculpatory evidence).

Mr. Wang will be severely prejudiced if he is not permitted to move forward with a Speedy Trial. First, given the arrests of the other 37 defendants and the press regarding this case,

there is great risk that Xue Yang will flee to China or somewhere else and that evidence supporting Mr. Wang's innocence will be destroyed.[4]  Therefore, waiting for months while Mr. Wang's co-defendants prepare for trial will only serve to harm Mr. Wang and prevent him from properly defending himself in court as quickly as possible.  There is a real risk that, as many months pass, defense witnesses' memories may fade.  Second, the ongoing reputational harm for Mr. Wang weighs heavily on him and his family.  Mr. Wang has a right to quickly and forever distance himself from the allegations in the Indictment, which lop Mr. Wang in with serious criminal activity such as drug trafficking.  Mr. Wang has been named personally in the U.S. Attorney's Office press release and in at least one news report covering the arrests and Indictment.  Mr. Wang runs a business in California with his wife, and he deserves to have his reputation cleared quickly.

The Indictment involves many defendants who are allegedly involved in a complex, international conspiracy involving contraband cigarettes, narcotics, and money laundering.  In contrast, Mr. Wang's case involves only whether Mr. Wang used the 2549 Line for illegal activities, and the evidence is clear that he did not.  Accordingly, Mr. Wang's case should be severed from that of his co-defendants and he should be permitted to proceed with a speedy trial that will take just a few days.

### D. MR. WANG IS ENTITLED TO EXPEDITED DISCOVERY, INCLUDING EARLY REVIEW OF THE GOVERNMENT'S 3500 MATERIAL.

Expedited discovery is appropriate in this case so that Mr. Wang can adequately prepare for trial and return to his normal routine in California.  As such, Mr. Wang requests that the Court order the government to immediately produce <u>any</u> exculpatory evidence in the

---

[4]  Indeed, the government recently informed the defense that it can no longer obtain cell site information for the 2549 Line because of the amount of time that has already elapsed.  That cell site information would have undoubtedly provided exculpatory evidence for Mr. Wang.

government's possession. *See Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Safavian*, 233 F.R.D. 12 (D.D.C. 2005).  Further, Mr. Wang asks the Court to order the production of any *Giglio* material in the government's possession. *See Giglio v. United States*, 405 U.S. 150 (1972).  Similarly, Mr. Wang requests all relevant Jencks Act material, 18 U.S.C. § 3500, in advance of trial so that he may adequately prepare for trial within this narrow timeframe.

The defense is ready to go to trial on June 1, 2013, as we informed the Court at the April 30, 2013 conference.  Expedited production of discovery and 3500 materials is appropriate here for all the reasons set forth above.

## IV. CONCLUSION

For all of the foregoing reasons, Mr. Wang asks for the relief requested.

Dated:  May 13, 2013

                                             Respectfully Submitted,

                                             SEWARD & KISSEL LLP

                                             By:  /s/ Rita M. Glavin
                                                  Rita M. Glavin
                                             One Battery Park Plaza
                                             New York, New York 10004
                                             Tel:  (212) 574-1309
                                             Fax:  (212) 480-8421
                                             glavin@sewkis.com

                                             *Attorney for Defendant*
                                             *Zhi He Wang*